and the Consolidated Case. Mr. Landau. Mr. Landau, thank you, Mr. Chief Justice, and may it please the Court. This case presents the question whether Congress has stripped Puerto Rico of access to any legal mechanism to restructure the debts of its public utilities, which provide essential services to its citizens, like electricity and water. Respondents contend that Congress denied Puerto Rico access to Chapter 9 altogether, but left Puerto Rico subject to Chapter 9's preemption provision. That anomalous result can't be squared with the statute's text and structure. Congress in 1984 defined the word State in the Bankruptcy Code, generally, to include Puerto Rico, except for the purposes of determining who may be a debtor under Chapter 9. But that's just another way of saying that Puerto Rico is outside the scope of Chapter 9. A State's only role in the Chapter 9 regime is to authorize its municipalities to be debtors. Indeed, Chapter 9 can't apply to Puerto Rico in light of the 1984 amendment. That amendment categorically precludes Puerto Rico from passing through the gateway into Chapter 9, which is located in Chapter 1, in section 109C2. Ginsburg. Mr. Landau, if that's true, don't you run up against, with respect to the Puerto Rico, Puerto Rico's legislation, the contract clause, the bar against impairing the lender's contracts, that Puerto Rico can't impair the lender's contracts? So apart from so, if there's a, if we're dealing only with the Puerto Rico legislation, doesn't that, in requiring non-consenting lenders to give up or have their claims reduced, Puerto Rico is violating the contract clause? Your Honor, the Respondents here have certainly brought contract clause claims. And if this Court decides the preemption issue in our favor, then they would certainly be allowed to litigate those contract claims issues on appeal, excuse me, on remand. The, the, this Court has never addressed the question whether the contract clause applies to Puerto Rico, which, as this Court is aware, is in a somewhat unique position in our Federal structure. That being said, the First Circuit has traditionally assumed that the, without deciding that the contract clause applies to Puerto Rico. And, again, that is an issue for remand. The question presently before this Court is the antecedent question on which the courts below ruled against us, which is to say that the Congress's exclusion of Puerto Rico is not part of Chapter 9's preemption provision. Roberts. 9. In other words, what, what is the background of this provision? Sure, Your Honor. It is a black box, to answer your question directly. There is no legislative history directly on point either way. So either side here is going to be limited to speculation on that score. The one thing that we do know for sure is that the mere exclusion of an entity from Chapter 9 is not typically deemed to be a representation of intent by Congress to preclude a State law. And to answer your question more directly, again, I am admitting this is speculation, just as their position is speculation. One thing that Congress could have been wanting to do is to put Puerto Rico and D.C. in the same boat for Chapter 9 purposes as Guam and the Virgin Islands, the other territories that are not even within the definition of State in the Bankruptcy Code in the first place. In other words, two somewhat unusual things happened when this provision was added. And again, to go back to your question, I think, Mr. Chief Justice, this came about after 1978, when the definition of State that had been in the Bankruptcy Code going all the way back to 1898 fell out of the Code. That definition broadly defined State to include territories and possessions. In 1978, there was an overhaul of the Bankruptcy Code, and there was no definition of State. I think Congress recognized pretty quickly, as early as 1979, there were amendments to fix that omission of the Bankruptcy Code. And the initial omission the initial fix that was proposed by Senator DeConcini in 1979 went back to the old definition. It says all territories and States are included and had no exclusion. Okay. Then in 1981, though, a new definition was proposed. That didn't go anywhere. In 1981, Senators Dole, Heflin, and DeConcini proposed a definition of State that defined State to include Puerto Rico and D.C. only, but then to exclude them for Chapter 9, the exclusion. Sotomayor's Honor, is there any compact with those other territories that precludes them from using their territorial power to reorganize their debts? There is not, Your Honor. So, in other words, precisely because Guam, let's say, or the Virgin Islands, by I think pretty basic principles of exclusio uneus, when Congress, which had long defined States to include all territories and possessions, suddenly in this definition in 1984, says State includes Puerto Rico and D.C., I think there's really no way to understand that other than to say that State doesn't include Guam and the Virgin  Sotomayor's Honor, I know that Guam and the Virgin Islands have Federal courts. Yes. They have Federal judges. Are they subject to constitutional provisions? Is it an open question of whether they're subject to the contract clause as well? To the contract provision limitation, I should say. I think it yes, Your Honor, it is. In other words, this Court has never answered that question as to whether or not they fall more on the Federal government-like side of that, where there's no contract clause with respect to the Federal government, or on the State-like side of that line, where there is a contract clause. Well, that's the open issue that we would have to go on and remand if we were to. Yes, that is certainly an open issue. So, again, I think just going back in a sense to the Chief Justice's question, which I think is really the question that everyone asks when they pick up this case, why would Congress have done that? And, again, I think one answer that's as plausible as any other that we've been able to come up with is that Puerto Rico and D.C., at least, even though they're included in the definition of State, at least for Chapter 9 purposes, are in the same boat as the other territories, which don't fall within the scope of Chapter 9 and thus don't have to, aren't subject to the Chapter 9 preemption provision. Kagan Mr. Leiner, can I ask you to focus on the text here a little bit? Because this gateway theory of yours, I'm not sure it matches up with the text very well. I mean, you could have a gateway provision which said something like, Puerto Rico is a State for all purposes except Chapter 9 or except for any provision in Chapter 9 or something like that, but Chapter 9, this provision, 101.52, was written much more specifically. It says except for the purpose of defining who may be a debtor under Chapter 9. So it's not any provision in Chapter 9. It's just for the purpose of defining who may be a debtor. Clement That is an absolutely critical point, Your Honor, and that goes to an interesting point of the structure of the code. The eligibility criteria for the various substantive provisions of the code, be it Chapter 9, Chapter 11, Chapter 7, are not located in those substantive chapters. They are located up in Chapter 1. So in other words, if Congress were to have said Puerto Rico is not a State for purposes of Chapter 9, that would actually not solve the problem at issue here, because the authorization, the gateway provision into Chapter 9 is not in Chapter 9. It's in Chapter 1. It's this somewhat unusual structure of the statute that I really think we can't emphasize strongly enough that to say that Puerto Rico is outside of Chapter 9, that wouldn't have stopped Puerto Rico from authorizing its municipalities under Chapter 1 to get into the Chapter 9 regime, and then they are off to the races under Chapter 9, because then all they have to do, all the Chapter 9. Sotomayor Mr. Landau, I'm not sure I understand that argument, so you're going to have to back up a minute. Clement Okay. I'm sorry. Yes, because it really is an important argument. Sotomayor It's, I think, critical to your point, which is Justice Kagan asked a direct question. Clement Yes. Sotomayor Why couldn't Congress have said much more directly, under 101, the term State includes the District of Columbia and Puerto Rico, except for Chapter 9?  Sotomayor If Puerto Rico is not a State for Chapter 9, then it couldn't have authorized its municipality to file under 109. It would have reached the same end, but more clearly saying that Puerto Rico is not a State. That 109 provision that Your Honor just referenced is not located in Chapter 9. It's located in Chapter 1. So for Congress to say, except for Chapter 9, it actually would not have reached that 109 provision. The way to close the gateway was to say Puerto Rico is not a State for purposes of authorizing its municipalities to be debtors under Chapter 9. That closes the door, which is not located in Chapter 9. Once you close that door, then you don't reach the chapter the provisions of Chapter 9 on which they rely and base their entire case don't come into play, because their whole argument is based on subsection 903.1. 903.1 is a proviso to 903. If you look at, and these now are within Chapter 9, as opposed to 109c2, the gateway provision, which is not in Chapter 9, if you look at Chapter 1, excuse me, section 903, it says this chapter, i.e., Chapter 9, shall not limit or impair the power of a State. If a State or if a jurisdiction like Puerto Rico is categorically barred by Congress from authorizing its municipalities to enter into Chapter 9, then that reservation of power makes no sense. It has no conceivable applicability to Puerto Rico. And so, therefore, the 903.1 proviso, which refers back to such municipality in 903, doesn't work either. In essence, Your Honor, Respondents are asking you to look at that proviso in 903.1 in isolation, as opposed to understanding how there is a decision tree here. Basically, the statutory definition in 101.5.2 sends you to 109c2, which is in Chapter 1, and then that's the gateway provision. And that says that Puerto Rico, we know, is not a State for purposes of authorizing its municipalities to enter into Chapter 9. Once you understand that that gateway is categorically closed to Puerto Rico, unlike any of the States of the Union, then 903, which is the next step in the decision tree, makes no sense as it purportedly applied to Puerto Rico, because what 903 says is this chapter shall not limit or impair the power of a State to control its municipality. Breyer. But then it has two other clauses, which are the key clauses. That's correct, Your Honor. And the trouble that I have is what it says, the same problem that Justice Kagan raised. I mean, you have a statute that prohibits importing a vegetable that isn't a fish, and we can't read vegetable as fish. I mean, it just isn't. What I'm having is the problem of the language. Breyer. Let me show you. The term State, just as she said it, includes the District of Columbia and Puerto Rico. Right. Where do we find that? In the first part of Title 11, which has to do with bankruptcy. So what it seems to be doing is it's the whole bankruptcy code. It's 11. So when I see the word State, that includes Puerto Rico. And then it says, except for the purpose of defining who may be a debtor under Chapter 9. So I go back, I look at it, and it says one of the things. It says, well, a State law prescribing a method of composition of indebtedness. That is not for the purpose of defining who is a debtor under Chapter 9. So what am I supposed to do about that? Again, Your Honor, if you look at this as the decision tree, you are already looking down here at the third, at the third. Breyer. Well, the first part of the tree says is State, nothing we say really stops you from controlling your municipality, except in one important respect. Right. And the important respect is that you cannot have your own bankruptcy law. But logically, that 903-1 part that you were referring to doesn't make any sense. Or I read it as a decision tree. What am I supposed to say? Okay. So the decision tree starts, as you recognize, with 101-52, the definition. It says Puerto Rico is not a State for purposes of determining who may be a debtor under Chapter 9. That sends us to Chapter 1 to 109c2. That provision, 109c2, says that an entity must, in order to get into Chapter 9, you must have that authorization from a State. So we know that Puerto Rico is categorically precluded from authorizing its municipalities to enter into Chapter 9. Okay. So that's the second step in the tree. Breyer. It can't be a debtor. Okay. And so then we get to the third step, which I think is exactly what Your Honor is asking. The third step in that decision tree says this chapter, i.e. Chapter 9, does not limit or impair the power of a State to control. So the question right there, I think, Your Honor, is what you put your finger on, which is to say, does that make any sense at all to think that in this provision, when Congress is talking about State, this chapter does not limit the power of the State, that Congress would have intended that to apply to a jurisdiction that Congress has not, has categorically precluded from even authorizing its municipalities? That's the key question. In other words, and, Your Honor, it's a very big deal to assume that Congress categorically precluded Puerto Rico from access to anything. Breyer. So then where in the code, except for this provision, are there dozens of places? 20,000? Where the word State is used outside of Chapter 9's debtor provisions, where then it makes sense to read Puerto Rico into it? There's about 40. And in fact, if you look at the legislature's briefs. And you have them in your brief? I don't know that we have tallied them up in our brief. No, no, but is there some reference I can get them? I believe, yes, Your Honor. But in all those provisions, debtor, creditor, State, play active roles in implementing the provisions of those chapters. Correct. So in all the other 40 places, the State is involved. Correct. By inheriting the definition of what a debtor and a creditor is, the State has rights and responsibilities under those provisions. Yes, Your Honor. What I'm understanding you to say is, Puerto Rico has been kicked out of Chapter 9 altogether. It doesn't even get into the gateway. Exactly right. And I think that the other place it's used is here. Correct. In 903, you have to be part of it in some way. That's exactly right, Your Honor. It's nonsensical to think that Congress, having categorically shut the door on Puerto Rico, that then it would mean for this to apply, Your Honor. Again, the only thing a State does under this entire Chapter 9 regime, which is not located exclusively in Chapter 9, but also in that eligibility provision up in Chapter 1, in 109c2, then you just the question then arises, and, Justice Breyer, if this actually did something, this would be a different case. But all this says, again, is this chapter does not limit or impair the power of the State to control. When you're talking about a jurisdiction like Puerto Rico that is not allowed to be authorizing its municipalities, then there's nothing to be preserved here. Mr. Landau, this is not very different from what we did in last year in Utility Air Regulatory Group v. the EPA. We had one general definition of a statutory term, and then we looked at it and its play within other sections, and we said it can't be given the same meaning because the definition applies to one generalized feature of the Act, and the use here is in a more specialized way. Absolutely, Your Honor. But you didn't cite Utility Air. Is there a reason you didn't? Well, Your Honor, I think we cited King v. Burwell, and there are many cases for the proposition that you can't just look at one isolated provision in context and not understand one isolated provision and not understand how that fits into the context. Again, I think Respondents are asking you to just pick up this case, read 903-1, and say here it is. All I have to do is to get myself to do the following thing. I could dress it up so people couldn't understand it, but what I would be doing is saying the following. It says a State law, and it says the chapter does not limit or impair the power of a State, okay, et cetera, et cetera. Right. All I have to say is that word State right there does not include Puerto Rico. Because Puerto Rico. My only problem with writing those words is somebody is going to direct me to the provision a little bit later where it says the word State in Title XI, of which this is part, means Puerto Rico. Well, Your Honor. Okay? Now, that's hard for me to do because of that language. But, Your Honor, I would — Your Honor has always been so sensitive to the contextual approach to statute. Well, that may be, but I can't say that an airplane means a horse. And I totally — no, but, Your Honor, if somebody is saying this doesn't apply to driving and then this one is about a subsequent provision is about a right turn on red regulation, you would say no, but driving has been taken completely out of the statute. In other words, you are in a position, by the time you get to — this is kind of a truism. This is basically a Federal — 903, when I'm saying this, is an important Federalism limitation on Chapter 9. It's actually stated more descriptively than anything else. It says this chapter does not limit or impair the power of a State. If we know by definition that Congress has shut the door, there is no door for Puerto Rico and no key for Puerto Rico, then to come along and say, well, it says State here, then I have to apply the power of State. I think you can — the definition of State, but I think you have to understand that when Congress has given a definition of State that categorically closes the door in the antecedent portion of the decision tree, you don't even reach this sensibly. Kagan. So, Mr. Landau, I think I get what you're saying now, which I didn't when I started with. You're saying they couldn't just say it's a State except for purposes of Chapter  9, because who gets into Chapter 9? So what they did was they said it's a State except for purposes of this gateway, and then they assumed that that meant that all of Chapter 9 wouldn't apply either. That's your basic argument. Landau, precisely, Your Honor. So, but before 1984, before this amendment, this 903-1 did apply to Puerto Rico, wasn't that right? Yes, Your Honor, that is correct. So you're saying that a really super-significant change, which is 903-1, applied to Puerto Rico before 1984, and then doesn't apply after 1984 because of this definitional move that they made here in 101-52. What you have to admit is — I'm not quite sure what the word — I mean, it's a — it would be a mysterious way. It would be an extremely kind of cryptic, odd way to make such a major change. Your Honor, but the major — let me just — I would say— I mean, it's almost like somebody doesn't want everybody to recognize what a major change is being made— No, no, Your Honor— —and figured out this way that is — where nobody would understand that that was happening, including the judges who would have to decide what this meant. The major — but, Your Honor, the major changes work both ways, because the major — the one point — I would just complement what Your Honor said, which is that prior to 1984, of course— Please. —Puerto Rico was within the remedial scope of Chapter 9. In other words, Puerto Rico — Your Honor made the point that Puerto Rico was within the preemption provision of Chapter 9, but it also got the benefits of Chapter 9. So until 1984, there was always complete symmetry between those entities that Congress gave access to Chapter 9, but then said, but you can't have your State provision, so the preemption provision. There was never any situation in which you couldn't do either. You couldn't have any access to a legal mechanism. Frankly, again, both sides have elephant-in-the-mousehole provision. The other side has the elephant-in-the-mousehole provision that Your Honor just said. Our elephant-in-the-mousehole provision is basically the same, to say it would be a huge elephant-in-the-mousehole if, for the first time, Congress, by simply taking Puerto Rico out of the access provision of Chapter 9, nonetheless wanted to preclude Puerto Rico to leave Puerto Rico in the preemption provision of Chapter 9. Roberts, I mean, that's your basic policy argument, and I'm not sure it carries much weight. Why would it be irrational for Congress to say, all right, this is the system we're going to apply to all the States, but when it comes to Puerto Rico, if they want changes, we want them to come to us, partly because Congress has a different sort of relationship with Puerto Rico than it has to all the other States? Clement, again, Your Honor. Sotomayor, why not treat it like every other territory? Well, exactly right. I think that's the mouse in the hole, which is, if you're going to treat it differently, wouldn't you expect them to say that? We're going to treat it not like a State and not like a territory. Absolutely. And frankly, it would be very anomalous, Mr. Chief Justice, in response to yours, because that would put Puerto Rico in a worse position, let's say, than Guam and the Virgin Islands. Roberts, that's a very — you came up with a very good answer, Mr. Landau, to my question. But I wonder why it's absurd to treat the District of Columbia and Puerto Rico different from Guam and the Virgin Islands. I mean, why would you lump those two, those four together? Well, again, Your Honor, Congress made this decision. One of the things that is somewhat unusual, and I think this Court is well aware of some of these constitutional status issues regarding Puerto Rico from the pending Sanchez-Valle case. I mean, the one thing that everyone in that case agreed on is that Congress, through the Puerto Rico Constitution, has recognized a status that gives Puerto Rico an incredible degree of autonomy. The dispute in that case is not whether Puerto Rico has this, you know, nearly State-like status. It's does that come from the people of Puerto Rico or from Congress? But everyone agrees that Puerto Rico operates in that very unique situation, which is really almost the opposite extreme of the spectrum from D.C., where D.C. has to have its laws submitted to Congress and they can veto it. So, again, we don't know why Congress — this goes back to the black box — chose to lump these two jurisdictions, which are kind of at opposite ends of congressional oversight. Certainly, the other side came up with a theory that the First Circuit embraced, that Congress was seeking to retain control over Puerto Rico's municipalities here, which is a very strange theory, given that Congress has not had control over Puerto Rico's municipalities since well before the Puerto Rico — the Commonwealth was created in 1952. That's just not the structure of the Puerto Rico government and its political relationship with the United States. Sotomayor, have you given up the Government Development Bank's position and that of some of the amici that the provision of 903-1 applies to States only when a debtor is in a Chapter 9 proceeding because of that provision's use of creditor? Your Honor, we have not advanced that argument. They make that argument. Our position is even more fundamental, which is you don't even have to reach that argument, which is the same. Sotomayor, are you rejecting the argument? We just didn't reach it because we don't need to get there. But we don't reject it. Thank you, Your Honor. Roberts. Thank you, counsel. Mr. McGill. Mr. Chief Justice, and may it please the Court. Everyone here agrees that in 1984, Congress withdrew from Puerto Rico and the District of Columbia the power to put their municipalities into Chapter 9 bankruptcy. Petitioner's position is that by the same enactment, Congress impliedly gave Puerto Rico and the District a much greater power that no State has possessed since 1946,  but no State has possessed the power to impair contract rights under the Constitution. Nothing about the Bankruptcy Code changes the application of the Contract Clause. They have to go into Chapter 9 to impair contracts in a meaningful way, correct? Yes, but, Justice Sotomayor So what makes you think that Congress intended to let Puerto Rico and the District of Columbia have free reign in whatever they wanted to do? Wouldn't they be subject, in your judgment, I'm sure you'd be arguing, they're subject to the contract impairment clause. And they were. Exactly. The Contract Clause applied directly to Puerto Rico by dint of the Jones Act from 1978. So you think Congress intended to stop Puerto Rico and the District of Columbia from passing emergency legislation that said, don't shut off the lights tonight? That Congress intended that that kind of temporary provision could only be subject to Congress, who may be on recess, who might be wherever it is, that it could not do that? Yes, Justice Sotomayor, because in 1946, that was precisely the decision Congress made when it decided to overrule this Court's decision in Feitu. Well, it decided to overrule it by giving States the opportunity to go into bankruptcy, and that would be a temporary stay to start with. So the question is, as I understand it, Justice Sotomayor, is what was Congress doing in 1984? Was it we all know that it removed from the district and from Puerto Rico the opportunity to put its municipalities into Chapter 9. Everyone agrees that. And it never gave the territories that. So the territories can pass a law that stops the lights from going out today until Congress comes into effect, because it can't do a permanent impairment of the contract. Justice Sotomayor, that's not correct, I don't believe. It's not presented here and nothing turns on it, but let me explain why this argument which shows up for the first time in the yellow brief, I think, is wrong. Puerto Rico was considered a State. It itself admits it was a, quote, unquote, State from the period of 1978 to 1984 when there was no definition of State. Prior to 1978, all States, territories, and possessions of the United States were States. After 1978, all States, territories, and possessions continue to be treated as States. And then in 1984, Congress enacts 10152, which says States include the district and Puerto Rico except for this one purpose, which is to defining who may be a debtor under Chapter 9. That so the question is whether, you know, it doesn't say Ohio, it doesn't say State includes Ohio, but clearly it does, because everyone acknowledges that the old definition of State has essentially carried through. So I don't believe it's correct, and no court I'm aware of has ever held that the district, that the Virgin Islands or Guam or the American Samoa are not States for purposes of the Bankruptcy Code. What we have here, however, is a clear textual provision that says Puerto Rico is a State and it is so is the District of Columbia except for this one purpose, which is defining who may be a debtor under Chapter 9. Sotomayor, doesn't the definitional section of the code tell you who qualifies as a debtor, who qualifies as a creditor, who can go into what chapter or not? It tells you if you're this kind of creditor, you go into that chapter. If you're that kind of creditor, you go to the individual goes here, business goes there, this one goes here, you have options. Isn't it what he describes as a gateway that tells you where you're a part or what you're a part of? Today that's true, but it wasn't true when Chapter 9 was first enacted in 1934 or 1937. In 1934, the gateway provision was Section 83, I mean, Section 81 of the 34 Act, which was then known as Chapter X or Chapter 10, and it was Section 83A again in 1937. So it was the recodification of the Bankruptcy Code in 1978 that moved all of the gateway requirements to Section 109, and no one has ever contended that that was intended to be a substantive change. But the point is that it tells you what kind of debtors could make use of what kind of provision. But that was always true. I mean, it is always. That's what the purpose of the gateway is. No, no. But it was true when it was part of Chapter 9, old Chapter X and old Chapter IX. It was true then that the gateway provisions defined who may be a debtor. It excludes today, for instance, solvent municipalities, right? Solvent municipalities may not invoke Chapter 9. That is a gateway requirement. And it used to be that the 1937 Act provided a laundry list of certain types of municipalities that were eligible for Chapter 9. It wasn't every municipality under the sun. It was a laundry list of, you know, six or seven categories. Sotomayor, if the definitional section defines State to include Puerto Rico, and you say even though it's not a part of Chapter 9, by definition in 109, it still remains a State for purposes of this reservation of State powers, why aren't we using creditor in 903 as it's used in the Bankruptcy Code? If you're going to be literal as to State, why aren't you literal as to creditor? As the Commonwealth, I think, here has acknowledged, it has abandoned that argument. And it's not clear to me that even the GDB believes in it, because if you look at page 802 of their reply brief, they acknowledge that Puerto Rico's own bankruptcy laws were preempted at least until 1984, which could be true only if you adopted our version or the plain meaning version of creditor. Sotomayor, if you're going to take the literal meaning of State definitionally, why aren't you taking the literal meaning of creditor? Katyal, because we are applying a principle that this Court laid down in Lawson and that it unanimously reaffirmed in Northwest Austin, that when a statutory definition mechanically applied will annihilate a major purpose of the statute, then you don't apply it. Or when it leads to absurd results, you don't apply it.  Sotomayor, how do I read into this statute? It would annihilate the major purpose of the 1946 Act, which was to prevent States from enacting their own bankruptcy laws. And that is the purpose of the statute. Well, you actually can't do that, meaning you can't do that according to our prior precedent. It is inherent in State sovereignty that States have to have some method, their own method, of controlling their municipalities. You can have uniform bankruptcy laws, but if you don't make them available to a municipality because the State hasn't approved it, can you rob a State under State sovereignty of all power to regulate its municipality and to save it from bankruptcy? Yes. I mean, that's always been true. It was true in 1946. Actually, so why do so many major commentators, bankruptcy writers, district and circuit courts, the Sixth Circuit included, have said that that's impossible, that you can't rob a State of the power to regulate its municipalities if you're offering it nothing in return? In 1946, the preemptive scope of what is now Section 903.1 embraced any municipality. It barred States from enacting — it's essentially the same language that exists today. Any — it barred States from binding non-consenting creditors to a composition of holders of municipal debt. And then we said in Fetoli that you can't force States to go into bankruptcy to let their municipalities — I believe that was Ashton, and it was — and, of course, Beacon subsequently readdresses Ashton and at least narrows Ashton. But the Tenth Amendment problem that was raised in Ashton was that State — that the Federal Government was giving municipalities too much rein to go into bankruptcy themselves without the supervision of their States. The problem raised in the Ropico decision, which is a 40-year-old district court decision from the Southern District of New York, is a very different problem, which is that the Federal Government is exercising too much power — too much And I would submit that simply, you know, to the extent Ropico was concerned about that, and it's not a holding, it's just a stray statement at the 15th page of the opinion, it's wrong.  Mr. McChrystal. McChrystal, Judge, v. Crown and Shield, said that Congress's power under the Bankruptcy Code is unlimited and supreme. I'm sorry. Kagan Can I talk to you about Mr. Landau's textual argument? Because I came in here thinking that your best argument is straight on the text. It's not about purpose, because I don't know what Congress's purpose here was. It's not on policy. It's just straight on the text. But I now have a better understanding of Mr. Landau's understanding of the text, and so I just want to engage you on that, which is, look, Congress couldn't have just said, except for purposes of Chapter 9, because of this fluky thing, which is that the gateway provision is outside of Chapter 9. So if it had just said, except for purposes of Chapter 9, somebody could have said, oh, well, look, I am entitled to be a debtor under Chapter 9, whether or not I'm thought of as a State, and so they did it this other way, which said, which attacked the gateway provision particularly, and then in doing that, they assumed that all of Chapter 9 would follow in its wake. Once you're not eligible for Chapter 9, none of the provisions of Chapter 9 apply to you. That's basically Mr. Landau's argument. So tell me why that's wrong. It's start — I think the fundamental fallacy of the argument is that the gateway requirement somehow excludes you from the scope of Chapter 9 entirely. And we know that's wrong, because if PREPA filed for Chapter 9 bankruptcy today, it's Section 921c of the Code, a part of Chapter 9, that would provide for the dismissal of that petition. Chapter 9 applies to all persons, you know, all people under the compass of Federal law. So I think that that's the fundamental fallacy. Chapter 9 does apply. The textual argument doesn't have to be just that. He has some — an additional string to the bow. That is, what he wants us to do is to take the words »a State«, this chapter does not limit or impair the power of a State, which is in 903. Now, he wants us to read that as if there were then a parentheses, »a State that is a debtor under Chapter 9.« You see? And that »a State«, what States? The States that can be debtors under Chapter 9. Now, that's how he wants us to read it. And that means that that provision does not apply to Puerto Rico or D.C. But it isn't just that no part of Chapter 9 could apply to them. It is that, if you look at the first sentence of 903, is that what it says is that those States that are referred to in that first sentence maintain all the power to control by legislation or otherwise a municipality. And he says, what could that apply to? Those entities that are not in Chapter 9 obviously have all the powers they normally had, but the ones that are in Chapter 9 might not. And so what this section 903 is addressed to are those States that are in Chapter 9, because there's no need to apply that first sentence to anyone else, and therefore it doesn't apply to Puerto Rico, that first sentence. But since the key sentences 1 and 2 are subparts of the first sentence, they don't apply either. I think that's the whole argument. And it isn't requiring us to really play that much. You don't play games with the words. All you do is say this is one of those parts of Chapter 9, not all, but one of those parts, that even though it doesn't use the word debtor under Chapter 9, applies only to debtors under Chapter 9. I think that's the argument I got, and is that that's, I think, probably consistent with what Justice Kagan was saying. I have two responses. You got it? You see what I'm saying? Two responses. The first is the textual response that you yourself, Justice Breyer, elaborated, that Congress spoke with remarkable precision here in 101-52. It says you're not a State for one purpose only, which is defining who may be a debtor under Chapter 9, and that's an unmistakable textual reference to Section 109. And so that tells you that Puerto Rico is a State for every other purpose under the Bankruptcy Code, because that's what Section 101 says. Breyer, in my guess, is if we go through Chapter 9, and the parts that we don't know about, that do apply to debtors under Chapter 9. But States are not debtors. Wait, wait, wait, municipalities, State municipalities. If we go through Chapter 9 and look at those portions of Chapter 9 that do apply to municipalities who are there legitimately as debtors, we will find some sentences that clearly apply only to those who are in there as debtors, and clearly do not apply to anyone else in the world. And he is saying this is one of those. So that misapprehends what Section 903 does. What Section 903 is, is at the time Congress is entering the field of municipal debt adjustment in 1937, Section 903 is enacted to say that Congress is not also entering the field of municipal reorganization, reorganization that could occur under Chapter 11. This was a very important point in both the 1934 and the 1937 debates. Debt adjustment was something that was seen as within Congress's purview. Reorganization of municipalities was seen as within the State's purview. So Section 903 says we are not entering the field of reorganization when we are entering the field of debt adjustment. And then, Feitoot misread Section 903, 1, 903, rather, at least in the judgment of the subsequent Congress, Feitoot misread Section 903 to permit conflicting municipal bankruptcy laws. And so Congress enacts Section 903, 1. This is now nine years later. And it enacts it for a very different purpose than Section 903 was enacted. It enacts it as separate provision specifically to overrule this Court's decision in Feitoot and to make clear that only under a Federal law should holders of municipal bonds, which are widely held, be compelled to accept a restructured debt. And they did some of these things. Ginsburg. Why would Congress put Puerto Rico in this never-never land? That is, it can't use Chapter 9, and it can't use a Puerto Rican substitute for Chapter 9. It's locked out by the provision on which you are relying, so it has to take the bidder. But it doesn't get any benefit at all. Why and what explains Congress wanting to put Puerto Rico in this anomalous position of not being able to restructure its debt? There are a few reasons, I think. And as Mr. Landau has said, there is no legislative history that sets this forth in detail. But let me suggest a few reasons why Congress might have done what it did. First, Congress has for a long time micromanaged Puerto Rico's debt. In the Jones Act, it specifically limited the amount of debt Puerto Rico could take on. That actually was kept and retained through the Public Law 600. And it was only in 1961 that Congress ended its own restriction of Puerto Rico's debt on the condition that Puerto Rico include that restriction in its own Constitution. So there is a long history of Congress intervening on Puerto Rico debt issues. Second, Puerto Rico debt is uniquely triple-tax exempt. Congress has essentially told the nation that and encouraged the nation, all of Puerto Rico, all over to buy this debt. So there is a — this debt, even more so than the average municipal bond, is widely dispersed throughout the nation. I think the third reason is that by 1984, Puerto Rico and D.C. are the two most indebted territories by a lot. Puerto Rico already had $9 billion of debt, the district owed $1.6 billion, and it was about to hit the general obligation bond market for the first time in its history. So the question I ask is, how would Congress, at that moment in time, actually think that this was the right time to abandon a 40-year-old policy of uniformity and preemption in the field of municipal bankruptcy, and for the first time since 1946, allow the District of Columbia and Puerto Rico to write their own municipal bankruptcy laws that may or may not treat their nationwide creditors fairly, that may or may not result in decrees that are enforceable nationwide? There's no good reason or plausible reason to think that Congress actually intended that result. And under this Court's cases in Timbers of Inwood and Cohen v. Dela Cruz, when the — when the two are asked, no indication in the legislative history. Kagan Well, Mr. McGill, if I could go back to Justice Breyer's question, because Justice Breyer gave you a view of the way to read this text, which is built on Mr. Landau's view, and said what's wrong with that? And you go with the gateway provision, and then even if not all of chapter 9 follows in its wake, at least all the provisions in chapter 9 that refer to debtors follow in its wake. And Justice Breyer said, what's wrong with that as a way to read this text? And then you answered him, I think this is fair to say, by giving a story about what Congress meant to do in 903-1, in the wake of Feitout. But, you know, both of you have stories about this, and it's just not clear which of you is right. And I guess what I most want to think about is this text. Why isn't Justice Breyer's, Mr. Landau's view of the text just as good, if not better, than yours? And I didn't come in here thinking that, but now I kind of am thinking that. So talk to me about the text, why that's not just as good a view of the text. Because 101-52 is an unmistakable textual reference to 109-C, and 109-C is telling us, it just, it says it's only for this one purpose, except for the purpose of defining who may be a debtor under chapter 9 of the statute. Sotomayor, that's a purpose that tells you whether you're now in chapter 9 as a debtor. So what Mr. Landau is saying is, once you say you're not a State when it comes to who may be a debtor under chapter 9, that it's a pretty natural thing to say, and that means that any provisions about being a debtor under chapter 9 don't apply to you. Let's be clear that States cannot be debtors, right? So it is under chapter 9. So it's not that the State, that the definition of State can't possibly track the definition of debtor. It's the municipality that has to track the definition of debtor. And 20-plus States categorically exclude their municipalities from seeking chapter 9 relief. So they are in the same boat, those municipalities, as San Juan. There is no textual distinction to be drawn from those municipalities under 109c2. Des Moines is just as much, just as much as San Juan lacks the authorization under State law to file a chapter 9 petition. Ginsburg. But then up to the State. It's up to the State to make that decision. Puerto Rico isn't given that option. Well, that is, of course, true. It is an act of Congress that does that. But there are numerous exclusions that are solely by dint of Federal law. In fact, the rest of 109c are exclusions that have been enacted by Congress of municipalities from chapter 9 entirely. Breyer, so you're saying is this, I take it, you're, you say, you're just used to this. So you don't understand that I'm not used to it. And the, the, you go look at 903, there are three separate sentences. And you're saying that the first sentence and second and third are really separate things. That number 2 and 3, which are numbered 1 and 2, are, have a big objective. If I read the cases you cite, I will say Congress had intended something very clear. They didn't want those States who weren't in chapter 9. They didn't want those States who were not in chapter 9. They didn't want them to make rules for bankruptcy of municipalities, not binding rules anyway. That was their purpose. And there's just no reason to think that when they had the specific thing before, they wanted somehow to let Puerto Rico and the District of Columbia do it. Do it that States couldn't do. And you say, well, there is a good reason. They say the good reason is the States can come into 9 and they can't. And, and you say, well, that isn't a good enough reason. Is that where, have I got this? Well, it certainly would have been a momentous change in, in the policy of preemption that had existed uninterrupted since 1946, that had been reaffirmed in 1976 and in 1978. This was battleground legislation in 1976 and 1978. It was, the House had rejected, had, had moved to remove the preemption provision and the Senate reinterpreted it. Breyer, rather than saying that, can you give me one more thing? Give me your best either law review article, treatise, legislative history, whatever it is, that will, that will show me that, in your view, look, these are separate things, this, this first sentence was not meant to be just a gateway into, into 1 and 2, that, that it was designed to do what you say. What do I think? I would look at this Court's cases in Iraq v. Beatty, Alaska v. United States, and Whitridge. Whitridge is, is an older opinion, but I think it's very telling here, because it's how you read a proviso that was enacted years after the antecedent provision. And what Whitridge says is you look to the purpose of the proviso and make sure that your, your construction is consistent with the purpose of the proviso. Iraq v. Beatty is, of course, a unanimous decision of this Court, and Alaska v. United States is, is another not-unanimous opinion of this Court. So I don't think it's, I think it's entirely possible to read Section 903-1 as a general, independent, standalone rule, and that certainly is how Congress enacted it when it was first enacted in 1946. I have elaborated already, I think 903 applies to every State in the sense that it demarcates where Congress is not entering and where Congress is. That is the role that 903 plays in this statutory scheme. Sotomayor, but the States that don't permit their municipality to become debtors are limited in what they can do by 903. In other words, their municipalities are not debtors. Their sovereign powers have been cut off. They cannot reorganize the debt except through Chapter 9. Then we're talking about a coercive provision. We're saying you can't do anything about the composition of your debt if 98 percent of the creditors want to reorganize their debt with you, and those 2 percent vultures are saying no. And a court would say it's not an impairment of a contract to redo this debt because of the need, everything else that we've said in the past. You're saying States can't do it if they can only do it under Chapter 9. You have in your hypothetical, Justice Sotomayor, I believe, supposed that the composition does not violate the contract clause. And the question then would be one of statutory construction, whether the composition you have hypothesized fits within the term of 903. Sotomayor, I assume it doesn't. You're saying 903 intended to preclude States, solvent States, solvent municipalities. It intended to stop States from doing any reorganization of any debt, even if it doesn't impair the contract clause, can't do it until every creditor approves, whether or not their municipality is in Chapter 9 or not. Except under Chapter 9. And what Congress is doing is using. And what's not coercive about that? What's the choice for States that Congress is giving? The choice for States is Chapter 9 or nothing, and the choice for Puerto Rico and the And what is going on right now. Sotomayor, it's like the Tenth Amendment right of States to deal with their municipalities, consistent with the Constitution. Where does that leave? You can make uniform bankruptcy laws, but nothing about that permits you to impair the rights of States so drastically. Well, the contract clause, I think, stands as an independent bar to any impairment of the obligation of contracts. It was recognized at the time of Beacons that States were powerless to act in this area. That was that's what comes right out of Beacons. Now, what's going on today with respect to Puerto Rico and D.C. is Congress is addressing right now across the street how to deal with Puerto Rico's fiscal crisis.  Congress is. Ginsburg. Isn't there also legislation to put Puerto Rico back in Chapter 9? May I answer? Yes. Yes, there is, Justice Ginsburg. Just like in Puerto Rico is Congress is considering a range of options for Puerto Rico, including Chapter 9, just as Congress considered a range of options for the District of Columbia during its own financial crisis in the 1990s, which resulted in a financial control board rather than Chapter 9. Thank you, counsel. Mr. Landau, you have 4 minutes remaining. Thank you, Mr. Chief Justice. Very quickly, I would like to make three basic points. First, I think we have seen an example of selective textualism this morning. For their respondent's argument to make any sense in respect to the various territories, they have to say that these other territories, such as the Virgin Islands and Guam, are encompassed within the definition of the word State. They just can't say that when Congress, which had long defined State to include all the possessions and territories, in 1984, in the very provision that we are considering, said State includes Puerto Rico and D.C. That is probably the clearest expressio unius one can imagine. So for them to be saying that, well, even though it said Puerto Rico and D.C., it meant to include everything. And again, Guam, for instance, and the Virgin Islands have also AAA tax-exempt bonds. So everything that is true for Puerto Rico would be true of the Virgin Islands and Guam. I guess the more fundamental point, though, is when you are asking them about how this — their argument is if you accept our position, then any municipality that is not authorized to file under Chapter 9 is also exempt from Chapter 9. They are trying to talk about municipalities. But I think as Justice Ginsburg made the point, no, here we are talking about States. Massachusetts, for instance, always has the power to authorize its municipalities to seek Chapter 9 relief. The door is open for Massachusetts, and as it was for Michigan, when Michigan on the same day authorized Detroit to file for bankruptcy, and Detroit, in fact, filed for bankruptcy. So the States that haven't yet authorized just maybe haven't had a crisis that requires them to do that. But they are trying to say you have to compare San Juan to Boston. Our point is the relevant comparison, since we are talking about the word State, is you have to compare Puerto Rico to Massachusetts or Michigan. Unlike Massachusetts or Michigan, which have the door — excuse me, the key to the doorway, to the gateway in 109c2, Puerto Rico categorically does not. Thus, when you arrive at 903, and the word State appears only three times in all of Chapter 9, it appears twice in Section 903, which is reaffirming, saying this chapter Chapter 9 does not limit or impair the power of States to control their municipalities. So that makes no sense as it applied to jurisdictions like Puerto Rico that are categorically excluded from coming through the gateway of 109c2, whereas it does make sense to apply that to the Massachusetts of the world, regardless of whether to date they have authorized their municipalities. Finally, the last point I would like to make is we have talked a lot about legal principles, as is appropriate today. But this is also a flesh-and-blood situation in Puerto Rico. Puerto Rico enacted this Recovery Act because it is facing a crisis in providing essential services to its citizens. It is implausible at best to think that Congress left — by taking Puerto Rico out of Chapter 9 meant to — and that's all we know, it took Puerto Rico out of Chapter 9 — to say that that precludes Puerto Rico from dealing in any way with a financial crisis for its public utilities, which in this State — for its public utilities, which provide basic services like electricity and water to its people. That's the question, whether people in a village in Puerto Rico will be able to get clean water. This is something, again, it's fine to talk about the generalities of the law, but when you are trying to think about congressional intent, please don't lose sight of the fact, of the fundamental implausibility and the anomaly of saying when Congress took Puerto Rico out of Chapter 9, that it meant to leave that Chapter 9 preemption provision in place, and thus leave Puerto Rico in the dire situation that led the Commonwealth to use its police powers to enact this Recovery Act in the first place. Thank you. Roberts. Thank you, counsel. The case is submitted.